IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONAVAN RYAN HILLER,

    Plaintiff,

v.

MICHAEL RAMSEY, et al.,

    Defendants.

Case No. 5:20-CV-03040-HLT

## MEMORANDUM AND ORDER

Plaintiff Donavan Ryan Hiller brings this 42 U.S.C. § 1983 action pro se[1] and alleges that Lawrence, Kansas police officers Michael Ramsey and Brad Williams violated his Fourth Amendment rights by using excessive force when they arrested him on August 30, 2019. Doc. 8. After Hiller did not comply with commands, Ramsey tasered Hiller to take him into custody. Williams thereafter removed the taser probes while Hiller was handcuffed.

Ramsey and Williams move for summary judgment on Hiller's claims. Doc. 20. They argue that qualified immunity shields them from Hiller's individual capacity claims. And they contend summary judgment is appropriate on the official capacity claims because Hiller lacks evidence that they acted pursuant to an official policy or custom or that they were decision-makers with final authority to establish policy, which is an essential element under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Court agrees and grants the motion.

---

[1] The Court is mindful of Hiller's pro se status and liberally construes his pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court will not take on the role of advocate. *Id.*

**I.    BACKGROUND[2]**

On August 30, 2019, Douglas County dispatch received a call from Christopher Slimmer asking police to locate his girlfriend, Carey Oroke. Doc. 21 at 2. Slimmer reported that Oroke had called him and told him that someone was trying to rape her in Lawrence. *Id.* Ramsey attempted to contact Oroke but could not reach her. *Id.* Another police officer successfully contacted Oroke, and she informed that officer that Hiller had a knife and was holding it to his own neck. *Id.* The officer relayed this information to Ramsey.

After learning Oroke's location in Lawrence, Ramsey approached the address. *Id.* He observed Oroke on the street wearing only a t-shirt and bleeding. *Id.* Oroke told the officers that Hiller had badly beaten her, that he had a knife, and that he stated he was going to kill himself. *Id.* at 3.

Ramsey then approached Hiller's residence and observed Hiller through the window wearing only boxer shorts. *Id.* Ramsey tapped on the window and asked Hiller to open his door. *Id.* Although Hiller moved to the door, he did not open it. *Id.* Ramsey again tapped on the window and asked Hiller to open the door. *Id.* Hiller then complied, slowly opening the front door but stepping back into residence. *Id.* Hiller characterizes Ramsey's communications with him as threatening, and he contends that Ramsey had drawn and pointed his taser at Hiller as soon as he opened the door. Doc. 23 at 5.

After Hiller opened the door, Ramsey twice asked him to come outside to talk. Doc. 21 at 3. Hiller stared at Ramsey and did not comply. *Id.* Ramsey asked Hiller to get down on the ground

---

[2]   Hiller does not specifically respond to most of Ramsey and Williams's statement of facts. To the extent that he does respond, he does not support his responses or his additional facts in accordance with Fed. R. Civ. P. 56(c) and D. Kan. Rule 56.1, as Defendants point out in their reply brief. *See* Doc. 24 at 1 ("Plaintiff failed to controvert any of Defendants' factual statements as required by Fed. R. Civ. P. 56 and Local Rule 56.1(b)."). Nonetheless, mindful of Hiller's pro se status, the Court has reviewed Hiller's filings and notes any areas of apparent factual dispute that are material to the issues in this case.

and then gave several more commands, and Hiller still did not comply. *Id.* Hiller contends that he was in shock after Oroke attacked him. Doc. 23 at 3-4, 6. Ramsey decided that he would use his taser to take Hiller into custody based on the violent nature of the call, his knowledge that Hiller had access to knives, and his lack of knowledge as to whether other people were in the residence. Doc. 21 at 4. Ramsey announced "taser, taser, taser" and deployed his taser at Hiller. *Id.* Hiller states that he was struck to the left of his genitals and his navel and fell backwards, striking his head on a coffee table in the house. Doc. 23 at 6.

Williams then assisted Ramsey in handcuffing Hiller. Doc. 21 at 4. Williams removed the taser probes from Hiller's person, and Ramsey accompanied Hiller to the hospital via ambulance. *Id.* Hiller alleges that he underwent a CAT scan and was diagnosed with a moderate concussion. Doc. 23 at 7. Hiller further contends that he suffered from severe headaches and testicular pain and discomfort and that he underwent a testicular ultrasound. *Id.* The state ultimately charged Hiller with three felony counts (aggravated sexual battery, aggravated battery, and criminal threat) and one misdemeanor count (criminal restraint). Doc. 21 at 4.

Hiller filed a complaint naming Ramsey and Williams as defendants on January 27, 2020, and an amended complaint on February 13. Docs. 1 & 8. After screening Hiller's pleadings under 28 U.S.C. § 1915A(a), the Court determined that Hiller's excessive force claims against Ramsey and Williams could proceed (Counts 1 and 2). Docs. 7 & 13. Ramsey and Williams now seek summary judgment on Hiller's claims. Doc. 20.

## II.   STANDARD

Summary judgment is appropriate if "the record, including depositions, documents, . . . affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" establishes that there is "no genuine dispute as to any material fact and the movant is entitled to

3

judgment as a matter of law." Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To carry this burden, the nonmovant "may not rely merely on . . . its own pleadings." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (internal quotations and citations omitted). "Rather, it must come forward with facts supported by competent evidence." *Id.* The inquiry turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In applying this standard, courts must view the evidence and all reasonable inferences from it in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587.

## III.     ANALYSIS

Ramsey and Williams argue that they are entitled to summary judgment on Hiller's individual capacity claims because qualified immunity shields them from liability. They also argue that summary judgment is appropriate on Hiller's official capacity claims because he has put forth no evidence that they acted pursuant to an established policy or custom or that they were decision-makers with final authority to establish policy, which is an essential element of his claim. The Court agrees with Ramsey and Williams and discusses each argument below.

### A.     Individual Capacity Claims.

The Court first analyzes whether Ramsey and Williams are entitled to qualified immunity as to Hiller's individual capacity claims. Qualified immunity protects government officials from civil liability when the official's conduct "does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). Once a defendant asserts qualified immunity, the plaintiff must show that: (1) the defendant's actions violate a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's actions. *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018). The plaintiff's burden is heavy because qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (internal quotation omitted). And courts may decide which element to address first. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019).

        **1.**    **Ramsey**

The Courts finds that Ramsey is entitled to qualified immunity. The Court exercises its discretion and first examines whether Hiller has shown that his rights were clearly established at the time Ramsey effected the arrest.

To show that a right is clearly established, a plaintiff must identify a United States Supreme Court opinion, a controlling circuit court opinion, or a "robust consensus of cases of persuasive authority" holding that an officer acting under similar circumstances violated the plaintiff's constitutional rights. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (internal quotation omitted). A plaintiff cannot satisfy his burden by identifying case law outlining general constitutional precepts of Fourth Amendment law; rather, the plaintiff must identify case law addressing the context confronted by the defendant. *Id.* at 742; *see also White*, 137 S. Ct. at 552 (reiterating that the plaintiff must "identify a case where an officer acting under similar circumstances [as the defendant] was held to have violated the Fourth Amendment" (internal quotation omitted)); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (explaining that a case directly on point is not required but existing precedent must put the "constitutional question beyond debate" (internal quotation

5

omitted)). This specificity of context is "especially important" in Fourth Amendment cases because it is "sometimes difficult" for an officer to determine how the relevant doctrine applies to the factual situation he is confronting. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

Here, Hiller does not identify case law establishing that an officer uses excessive force when he fires his taser under the undisputed facts of this case. Hiller cites no cases supporting his position, and his unrepresented status does not excuse this failure. *See Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to [the court] what he thinks constitutes clearly established law."); *see also Burden v. Wood*, 200 F. App'x 806, 808 (10th Cir. 2006) (affirming summary judgment in favor of a police-officer defendant where the pro se plaintiff "made no effort to rebut" qualified immunity).

And, although the Court refuses to take on the role of advocate for Hiller, the Court notes that the controlling precedent suggests that Ramsey's conduct did <u>not</u> violate a clearly established right. It is well settled in the Tenth Circuit that a police officer may not use a taser "on a nonviolent misdemeanant who [does] not pose a threat and [is] not resisting or evading arrest without first giving a warning." *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 667 (10th Cir. 2010); *see also Casey v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007) (finding that an officer was not entitled to qualified immunity for using a taser "immediately and without warning against a misdemeanant"). In *Casey*, the plaintiff Edward Casey took a court file, which was not supposed to be removed from the courthouse, with him to the parking lot when he went to retrieve money from his truck to pay a fine. 509 F.3d at 1279-80. As Casey returned to the courthouse, an officer grabbed his arm and then tackled him, but did not advise Casey that he was under arrest. *Id.* at 1280. A second officer arrived and tasered Casey within minutes. *Id.* More officers then arrived, and Casey was handcuffed, his face was banged into the concrete, and he was tasered again before

being forced into a patrol car. *Id.* The Tenth Circuit held that "it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance." *Id.* at 1286. The court further concluded that the officer's use of excessive force violated clearly established law, so the officer was not entitled to qualified immunity. *Id.*

The Tenth Circuit confronted similar facts in *Cavanaugh*. In that case, officers responded to a non-emergency call from a husband seeking help locating his wife, Shannon Cavanaugh, after a domestic dispute. *Cavanaugh*, 625 F.3d at 662-63. Although Cavanaugh had reportedly left home with a kitchen knife, the defendant officer did not see a knife in her hand when he observed her walking towards her home. *Id.* at 663. As she quickly walked towards her front door, the officer tasered her in the back without warning, causing her to strike her head on concrete steps and suffer a traumatic brain injury. *Id.* The Tenth Circuit concluded that the district court properly denied qualified immunity under *Casey*. *Id.* at 667.

Ramsey's conduct is distinguishable from the officers' conduct in *Casey* and *Cavanaugh*. Hiller was not a nonviolent misdemeanant; rather, Ramsey had observed a half-dressed and bloodied woman on the street in front of Hiller's house and understood that Hiller had beaten and sexually assaulted her and had a knife. These circumstances, absent in *Casey* and *Cavanaugh*, would lead a reasonable officer to approach Hiller with heightened caution. *See Tanner v. San Juan Cty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1135 (D.N.M. 2012) ("Courts generally give officers more leniency in the excessive force context when they have specific information available to them indicating that a suspect has engaged in violent behavior in the past."). After approaching Hiller's house and observing him, Ramsey could see that Hiller did not have a knife in his hand. Hiller, however, remained in his house with potential access to weapons and was not cooperative.

7

Although Hiller contends that he was in shock because the woman had beaten him, there are no facts indicating such injuries or suggesting that Ramsey would have been aware of these issues at the time. The Court must judge Ramsey's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Ramsey decided to use his taser on Hiller after Hiller repeatedly ignored verbal commands, including a command to get on the ground, and Ramsey was unsure whether other people might be in the house. *Contra Casey*, 509 F.3d at 1286 (denying qualified immunity where the officer conceded that she did not believe the plaintiff presented an immediate threat to himself or others). Although Ramsey did not specifically inform Hiller that he was under arrest or that Ramsey was planning to use his taser, Hiller contends that Ramsey had pointed the taser at him as soon as he opened the door. After apparently seeing the taser, unlike the plaintiff in *Casey*, Hiller still did not comply with Ramsey's commands. Nor did Hiller give any indication that he intended to submit or surrender to Ramsey. Ramsey then used his taser to effect the arrest. While "[t]he repeated use of the taser against a subdued offender is clearly unreasonable and constitutes excessive force," *see Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016), Hiller had not been previously subdued and had not otherwise shown that he would fully cooperate with Ramsey. Ramsey also used his taser only once. Ultimately, *Casey* and *Cavanaugh* do not clearly establish that Ramsey's conduct would have violated the Fourth Amendment.[3]

A review of case law outside the Tenth Circuit further supports the conclusion that Ramsey's conduct did not violate clearly established law. Indeed, in a factual situation somewhat

---

[3] The Court does not resolve the first prong of the qualified-immunity analysis for Ramsey. Rather, the Court explains why the existing precedent fails to satisfy the second prong.

8

analogous to the instant case, the Eleventh Circuit condoned an officer's use of a taser where an individual repeatedly ignored verbal commands during a traffic stop. *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (finding no excessive force where the defendant officer tasered plaintiff, after the plaintiff was uncooperative, acted belligerently, and ignored five commands to retrieve documents from his vehicle). The court found that there was "a reasonable need for some use of force" in arresting the *Draper* plaintiff, and "[t]he single use of the taser gun may well have prevented a physical struggle and serious harm to either [party]." *Id.* A reasonable officer could have believed the same thing true here, especially when confronted with an individual who was suspected of committing violent crimes and who had reported access to a knife. *See Kisela*, 138 S. Ct. at 1153-54 (reversing the denial of qualified immunity where the officer's actions were like a prior case finding the use of deadly force did not violate the Fourth Amendment, and a reasonable officer could have been guided by that case).

Because no reasonable jury could conclude that Hiller met his burden to show that Ramsey's conduct violated clearly established law, Ramsey is entitled to qualified immunity and summary judgment on Hiller's claim. *See Knopf*, 884 F.3d at, 944 ("If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity." (internal quotation omitted)).

### 2. Williams

As for Williams, Hiller again has not met his burden to refute qualified immunity. Hiller does not point to any case law suggesting that Williams's removal of the taser probes from Hiller's person violated a clearly established constitutional right. Williams is entitled to qualified immunity on this basis, but also because Williams's conduct does not amount to excessive force in violation of the Fourth Amendment. *See id.* (articulating a plaintiff's two-part burden to rebut qualified immunity, which includes showing that the defendant's conduct "violated a federal constitutional

9

or statutory right"). In screening Hiller's amended complaint, the Court previously stated that his claim for excessive force against Williams was a "very close call." Doc. 13 at 2. And at this procedural juncture, Hiller has not put forth evidence from which a reasonable jury could find that Williams violated Hiller's constitutional rights.

"[U]ses of force that are not objectively reasonable are unconstitutional." *Casey*, 509 F.3d at 1284. Courts recognize that "a reasonable amount of force" is necessary to remove a taser probe from the skin. *Sturm v. City of Indianapolis*, No. 114CV00848RLYMPB, 2016 WL 2894434, at *11 (S.D. Ind. May 18, 2016); *see also James v. Dyer*, No. 14-2283, 2015 WL 1064626, at * 2 (C.D. Ill. March 9, 2015). Where a plaintiff experiences only de minimus injury from removal of taser probes, courts have not generally found excessive force violations. *See, e.g.*, *Sturm*, 2016 WL 2894434, at *11 (finding that no reasonable jury would find the officer used excessive force where the plaintiff could not recall the removal and "had no associated pain, itching, or bruising, and sustained very minor injuries"); *Davis v. City of Port Aransas*, No. 2:14-CV-80, 2015 WL 758278, at *6 (S.D. Tex. Feb. 23, 2015) ("[M]ore than one court in this circuit has held that the removal of Taser leads does not amount to excessive force where it results in no more than *de minimus* injury.").

In the instant case, Hiller alleges in his amended complaint that Williams "forcefully" removed the taser probes. Doc. 8 at 3. But Hiller does not contend—or offer evidence showing—that Williams pushed the probes further into his skin, enlarged any existing punctures or caused new ones, or otherwise took any action unnecessary for their removal or for the purpose of causing Hiller additional pain. Further, Hiller does not contend that he suffered any injury whatsoever

resulting from Williams removing the probes.[4] No reasonable jury could find that Williams's conduct amounted to excessive force in violation of the Fourth Amendment. Because Hiller has not met his burden to show either qualified-immunity prong, Williams is entitled to qualified immunity and summary judgment on Hiller's claim.

### B.     Official Capacity Claims.

The Court now turns to Hiller's official capacity claims.  A suit against an individual in his official capacity is generally treated as a suit against the entity employing that individual. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)). A government entity may only be liable for the actions of its employees if those actions were taken pursuant to "official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *see also Monell*, 436 U.S. at 694 (concluding that a local government entity may not be held liable simply under a respondeat superior theory). "'[O]fficial policy' often refers to formal rules or understandings—often but not always committed to writing . . . ." *Pembaur*, 475 U.S. at 480. Actions taken by final policymakers may also be considered official policy. *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1285 (10th Cir. 2007) ("[A] municipality is responsible for *both* actions taken by subordinate employees in conformance with preexisting official policies or customs *and* actions taken by final policymakers, whose conduct can be no less described as the 'official policy' of a municipality.").

Hiller does not contend that Ramsey and Williams acted pursuant to any official policy or custom, nor does he contend that they were final policymakers. And in opposing the summary

---

[4]    Hiller does claim that he suffered "testicular pain and discomfort." Doc. 23 at 7. But he admits that that taser probes struck him to the left of his genitals and his navel, *see id.* at 6, and does not connect these alleged injuries to Williams's conduct.

11

judgment motion, Hiller has set forth no specific facts showing a genuine issue for trial as to whether Ramsey and Williams took any action pursuant to official policy or that their actions could be considered official policy. Summary judgment in favor of Ramsey and Williams is therefore appropriate because no reasonable jury could find for Hiller on his official capacity claims.

## IV.      CONCLUSION

Summary judgment is appropriate on Hiller's individual capacity claims because Ramsey and Williams are entitled to qualified immunity, and on Hiller's official capacity claims because there is no evidence whatsoever that Ramsey and Hiller acted pursuant to official policy. For the reasons discussed in further detail above, the motion is granted.

THE COURT THEREFORE ORDERS that Ramsey and Williams's Motion for Summary Judgment (Doc. 20) is GRANTED. Judgment shall be entered in favor of Ramsey and Williams on the claims. This case is closed.

IT IS SO ORDERED.

Dated: December 3, 2020                    */s/ Holly L. Teeter*
                                                                   HOLLY L. TEETER
                                                                   UNITED STATES DISTRICT JUDGE